UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                 :
**CURNAL LINDOW**,
                 :
                              Plaintiff,               :    **MEMORANDUM DECISION AND ORDER**
                 :
        – against –               :    23-CV-8860 (AMD) (JAM)
                 :
**ARGENT MORTGAGE COMPANY, LLC;**
**AMERIQUEST MORTGAGE COMPANY;**   :
**ARGENT SECURITIES INC.; DEUTSCHE**
**BANK NATIONAL TRUST COMPANY AS** :
**TRUSTEE FOR SECURITIZED TRUST**
**ASSET BACKED PASS THROUGH**        :
**CERTIFICATES 2003-W10 TRUST, AND**
**DOES 1 THROUGH 10**,                        :

                             Defendants.       :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       This action arises out of the sale in foreclosure of a property at 936 Atlantic Avenue, Brooklyn, New York 11238 more than fifteen years ago. The plaintiff asserts that the New York state court foreclosure proceedings were based on a fraudulently conveyed and improperly assigned mortgage. He further alleges that he was and remains the true owner of the foreclosed property. The complaint names various defendants, who were allegedly involved in the mortgaging of the property and the foreclosure proceedings, including Argent Mortgage Company, LLC; Ameriquest Mortgage Company; Argent Securities, Inc.; Deutsche Bank National Trust Company as Trustee for Securitized Trust Asset Backed Pass Through Certificates 2003-W10 Trust; Galf Holdings, LLC; and numerous Doe defendants. (ECF No. 1.) To date, only Defendants Argent Mortgage Company, LLC; Ameriquest Mortgage Company; and Argent Securities, Inc. (collectively, "the defendants") have appeared.

The plaintiff asserts four causes of action: (1) a claim for deprivation of his property rights, arising from the wrongful foreclosure (*id.* ¶¶ 56–74); (2) a claim to quiet title in the property (*id.* ¶¶ 75–78); (3) a claim for a declaratory judgment (*id.* ¶¶ 79–85); and a claim for fraud (*id.* ¶¶ 86–89).  The plaintiff asks the Court to declare that the defendants do not have — and never had — an interest in the foreclosed property, to declare that the plaintiff is the rightful titleholder of the property, and to award compensatory and punitive damages.  The defendants moved to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

For the reasons explained below, the defendants' motion is granted.  The plaintiff may file an amended complaint within 30 days of entry of this order.

## BACKGROUND

The facts recounted below are taken from the plaintiff's complaint and its attachments, as well as documents of which the Court may take judicial notice, including documents filed in related state court proceedings.  *See, e.g.*, *Murphy v. Riso*, No. 11-CV-873, 2012 WL 94551, at *4 (E.D.N.Y. Jan. 12, 2012).  For purposes of this motion, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

**I.     The State Court Foreclosure Proceeding**[1]

On November 12, 2004, Defendant Argent Mortgage Company, LLC, ("Argent"), brought a complaint for the foreclosure of a mortgage in New York Supreme Court, Kings

---

[1] The state court proceeding predated mandatory electronic filing and the entire docket has not yet been digitized.  Many of the filings, however, including all of those from which these facts are taken, are accessible through the Kings County Clerk's Office Case Search feature, available at: https://iapps.courts.state.ny.us/webccos/kingscc/indexSearch?6-2.-formIndexSearch.

2

County, under index number 37091/2004.[2]  Through this proceeding, Argent sought to foreclose on a property at 936 Atlantic Avenue, Brooklyn, New York 11238.  Grittley Watts signed and initialed the mortgage agreement and note, dated October 3, 2003, as the borrower.  (ECF No. 1-2 at 31–55.)  In the foreclosure action, Argent alleged that Watts missed several scheduled payments, and that Argent properly served Watts with a notice of default and provided Watts an opportunity to cure the default.  *Argent Mortgage Company, LLC v. Watts*, Ind. No. 37091/2004 (Sup. Ct., Kings Cnty.), Complaint (Nov. 6, 2004).  Argent also represented that it had filed a Notice of Pendency at least twenty days before initiating the foreclosure action.  Pursuant to N.Y.C.P.L.R. § 6501(a), the filing of the Notice of Pendency, serves as "constructive notice, from the time of filing of the notice only, to a purchaser from, or incumbrancer against, any defendant named in a notice of pendency." *Id.*

On February 23, 2005, Justice Ruditzky of the New York Supreme Court, Kings County appointed a referee to investigate and report on Argent's claim of default and to determine whether the mortgaged property could be sold in parcels.  *Id.* Order (Feb. 23, 2005). The referee filed an initial report in April 2005, (*id.* Report of Referee to Compute (April 19, 2005)), and on June 30, 2005, Justice Ruditzky entered a judgment of foreclosure and sale.  *Id.* Judgment of Foreclosure and Sale (June 16, 2005).  That order instructed the referee to sell the foreclosed

---

[2] The defendants' arguments notwithstanding (ECF No. 17-2 at 5), the plaintiff sufficiently identifies the foreclosure action and incorporates it by reference in various attachments to the complaint.  (*See* ECF No. 1-2 at 2; *id.* at 18.)  The defendants also claim that the plaintiff "fails to identify the mortgage loan at issue" and "fails to state which Defendant was the plaintiff in the foreclosure proceeding."  (ECF No. 17-2 at 5.)   But the mortgage loan at issue is obviously the mortgage loan attached to the plaintiff's complaint.  Additionally, the state court complaint, which is publicly accessible under the index number that the plaintiff cites, makes clear that Argent was the plaintiff in the foreclosure proceeding and was represented by the same law firm representing the defendants in this action.  Accordingly, the Court rejects the defendants' argument that the complaint is "so conclusory" that it "fails to give notice of the basic events or circumstances giving rise to liability."  (ECF No. 17-2 at 5.)

3

property by May 6, 2006. *Id.* After publishing the required notice of sale, the referee scheduled a sale at auction for May 11, 2006. *Id.* Referee's Report of Sale (Feb. 20, 2007).

On May 3, 2006, about a week before the scheduled auction of the property, the plaintiff filed an Order to Show Cause and an emergency application in the state court proceeding, asking the court to enjoin the pending auction and sale. *Id.* Proposed Order to Show Cause (May 3, 2006). In support of this request, the plaintiff submitted an affidavit in which he stated that the "property represent[ed] a substantial portion of [his] net worth." *Id.* Affidavit of Curnal Lindow in Support of Order to Show Cause ¶ 2. He also affirmed that he had a contract in place to sell the property to a purchaser, which would allow him to pay the balance of the Watts mortgage due to Argent in the foreclosure action. *Id.* ¶ 3. Further, his counsel submitted in an affirmation that:

> Curnal Lindow is the true owner for the property of 936 Atlantic Avenue, Brooklyn, New York. The subject property was deeded to Gritley Watts for the purpose of refinancing due to his good credit by Curnal Lindow. However, Curnal Lindow is recognized by Grittley Watts as the true owner and the person responsible for paying off its debts.

*Id.* Emergency Affirmation of Kecia J. Weaver in Support of Order to Show Cause ¶ 1 (May 9, 2006).

On May 9, 2006, Justice Lewis (on behalf of Justice Ruditzky) entered an Order to Show Cause, as the plaintiff requested. *Id.* Order to Show Cause (May 9, 2006). That order allowed the referee to hold the auction on May 11, 2006, as scheduled, but instructed the referee to stay the transference of the deed indefinitely and to inform all bidders of the stay without prejudice to any parties' right of redemption. *Id.* In the following weeks, Argent and the successful bidder each filed opposition papers, asking the court to vacate the stay. *Id.* Affirmation of Karen B. Olson in Opposition to Order to Show Cause (May 25, 2006); *id.* Affirmation of Jay S.

4

Markowitz in Opposition (June 6, 2006). Both parties argued, in sum and substance, that the plaintiff did not own the property and was not a named defendant in the foreclosure action and therefore had no standing to intervene in the proceeding. *Id.* On October 13, 2006 — two weeks after a status conference to discuss the issue — the court vacated the May 9 stay and directed the referee to transfer the deed in accordance with the results of the May 11 sale at auction. *Id.* Order Vacating Stay (Oct. 13, 2006).

On November 9, 2006, the plaintiff filed another Order to Show Cause. *Id.* Order Denying Order to Show Cause (Nov. 13, 2006). The court stayed the proceedings on the following day. *Id.* Just a few days later, however, the court vacated that stay, seemingly ending the plaintiff's attempt to assert ownership over the property. *Id.*

In the interim, and as described in a subsequent report of sale, the referee sold the property to the highest bidder — Defendant Galf Holdings — at auction on May 11, 2006. *Id.* Referee's Report of Sale (Feb. 20, 2007). The referee accepted a down payment from the bidder on that date. Once the court vacated the stays, the referee executed and delivered a deed of conveyance to the purchaser.[3] *Id.* Referee's Report of Sale (Feb. 20, 2007). The referee eventually filed his report of sale on March 13, 2007. The state court confirmed and ratified that report on November 19, 2007.

The court appointed a different referee to determine the distribution of surplus money from the sale, including "to ascertain and report the amount due to Curnal Lindow." *Id.* Decision and Order (Nov. 1, 2007). The plaintiff filed a notice of claim to the surplus money on March 19, 2007, asserting his interest as the "grantor" of the property from Watts. *Id.* Notice of Claim

---

[3] By the time the referee transferred the deed of conveyance, the Supreme Court had granted the bidder the right to assign its bid to a separate purchaser at the same purchase price.

5

(Mar. 19, 2007). Ultimately, the referee entered a report on April 22, 2008, finding that the surplus funds — $67,974.05 minus $25,320.78 in liens owed, or $42,653.27 — should be distributed to the plaintiff's counsel on the plaintiff's behalf, and the court issued an order confirming the referee's report. *Id.* Order Confirming Referee's Report and Ordering Distribution of Surplus Monies (Mar. 11, 2009).

## II.  Federal Court Action

The plaintiff filed this action on December 1, 2023. He asserts four causes of action, which all have the same allegation at their core: The plaintiff maintains that the defendants "did not have the requisite title, perfected security interest or standing to proceed in a foreclosure" action. (ECF No. 1 ¶ 28.) Specifically, the plaintiff alleges that the defendants "unlawfully purported to assign, transfer, or convey its interest in Plaintiff's Note." (*Id.* ¶ 22.) In support of this allegation, the plaintiff claims that the defendants "could not and cannot establish possession, show proper receipt, transfer, negotiations, assignment and ownership of the Tangible Note or Deed of Trust, resulting in imperfect security interest and claims; therefore, none of the Defendants have perfected any colorable claim of title or security interest in the subject property." (*Id.* ¶ 31.) The plaintiff argues that, as a result, "none of the parties to [the sale at foreclosure], nor any of the Defendants in this case, hold a perfected and secured claim in the subject property; and that all Defendants are equitably estopped and precluded from asserting an unsecured claim against Plaintiff's estate." (*Id.* ¶ 32.) According to the plaintiff, therefore, the defendants "illegally commenced and completed foreclosure sale of the subject property under the Deed of Trust or Mortgage via an *in rem* action supported by false or fraudulent documents." (*Id.* ¶ 68.)

6

## LEGAL STANDARD

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotations omitted). Where, as here, "a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). Nevertheless, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry," *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quotation omitted), *aff'd*, 561 U.S. 247 (2010), and "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has observed, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). "Accordingly, the 'dismissal of a *pro se* claim as

insufficiently pleaded is appropriate only in the most unsustainable of cases.'" *Id.* (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)).

## DISCUSSION

### I. Subject Matter Jurisdiction – *Rooker-Feldman* Doctrine

The defendants argue that the Court lacks subject matter jurisdiction to consider all of the plaintiff's claims under the *Rooker-Feldman* doctrine. "Where a federal suit follows a state suit, the former may be prohibited by the so-called *Rooker-Feldman* doctrine in certain circumstances." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). The doctrine arises from two Supreme Court cases decided decades apart, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and emphasizes the principle "that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock*, 422 F.3d at 85). In practice, this means that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock*, 422 F.3d at 84.

However, as the Supreme Court has cautioned, the doctrine is narrowly "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Second Circuit has, in turn, established "four requirements for the application of *Rooker-Feldman*: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (cleaned up) (quoting *Hoblock*,

8

422 F.3d at 85). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Hoblock*, 422 F.3d at 85. "Although all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar . . . the second requirement — that the plaintiff complains of an injury caused by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive." *Dorce v. City of New York*, 2 F.4th 82, 101–02 (2d Cir. 2021) (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)). As relevant here, courts in circuit have held consistently that direct challenges to state court judgments of foreclosure are barred by the *Rooker-Feldman* doctrine. *See Ozuzu v. Greenpoint Mortg. Funding*, No. 19-CV-3783, 2020 WL 5658776, at *5 (E.D.N.Y. Sept. 23, 2020).

a. **The Procedural Requirements**

As an initial matter, this action meets procedural requirements of the *Rooker-Feldman* doctrine. The fourth requirement is clearly satisfied, as the state court entered the judgment of foreclosure nearly two decades before the plaintiff commenced this proceeding. However, whether the plaintiff lost in state court is a much closer question. As the defendants note, the plaintiff's complaint "fails to state whether he was even a party to the [foreclosure] proceeding." ECF. No. 17-2 at 4. In fact, review of the state court docket and filings show that the plaintiff was not a named party in the state court foreclosure proceeding. The first named defendant in that proceeding was Grittley Watts, and eventually six other defendants were added to the caption as co-tenants in possession of a portion of the mortgaged premises. But the plaintiff was not among this group. While this fact tends to undermine the defendants' argument that the *Rooker-Feldman* doctrine deprives the Court of jurisdiction, it is not decisive of the matter.

9

The Second Circuit recently addressed a similar issue in *Dorce v. City of New York*, 2 F.4th 82 (2021). There, the court rejected the plaintiffs' argument that the first requirement of the *Rooker-Feldman* doctrine was not satisfied because they were not named as defendants in an *in rem* foreclosure action in state court. *Id.* at 102–03. Although the panel conceded that the argument had "some logical force," it concluded that "[t]he mere fact that Plaintiffs were not named parties to the state action against the property does not abrogate the operation of *Rooker-Feldman*." *Id.* at 102. It further reasoned that holding otherwise would allow any party with an interest in the property who is not named as a defendant in foreclosure proceedings to attack state court judgments in federal court. *Id.*

This situation is analogous. Moreover, unlike the plaintiffs in *Dorce*, who did not appear or defend their interest in the foreclosure action, the plaintiff was an active litigant in the state court proceedings, notwithstanding his status as a non-party. He filed multiple orders to show cause asserting his interest in the property and succeeded in convincing the court to stay temporarily the transference of sale on at least one occasion. He also filed a successful notice of claim for the surplus proceeds of the sale at auction. And though he argued against foreclosure and sale at auction, the state court entered that judgment nonetheless. "[T]he foreclosure judgment was indisputably adverse to" the plaintiff here, *Barlow v. Nationstar Mortg. LLC*, No. 21-1483, 2022 WL 950949, at *2 n.3 (2d Cir. Mar. 30, 2022) (summary order), and the first requirement is therefore satisfied.

      **b.**      **The Substantive Requirements**

The Second Circuit has held that the substantive requirements — and specifically the second requirement that the plaintiff complains of an injury caused by a state-court judgment — are the "core requirement[s] from which the other[ ] [*Rooker-Feldman* requirements] derive."

10

*Sung Cho*, 910 F.3d at 646 (quoting *Hoblock*, 422 F.3d at 87).  In order to determine whether "federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments," courts must consider whether "the third party's actions are produced by a state-court judgment" or whether they are "simply ratified, acquiesced in, or left unpunished by it." *Id.* (internal quotations omitted).

      Here, most — but not all — of the plaintiff's alleged injuries are caused by the state court foreclosure order directly.  For instance, the Second Circuit has explained that a plaintiff's request that the Court "grant him title to his property because the foreclosure judgment was obtained fraudulently" in the state proceeding is an impermissible claim of an injury caused by a state court judgment of foreclosure. *Vossbrinck*, 773 F.3d at 427; *see also Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (summary order).  This is precisely the relief the plaintiff asks the Court to grant in his causes of action to quiet title (ECF No. 1 ¶¶ 76–78) and for a declaratory judgment, which alleges that he is "the equitable owner of the subject property." *Id.* ¶ 84.  More fundamentally, the plaintiff also alleges that "the foreclosing entity lacked the requisite standing to foreclose on the subject property" and "had no authority to sell the subject property at foreclosure sale to the highest bidder," rending the foreclosure sale "void as a matter of law." *Id.* ¶¶ 71–73.  These claims are exactly the kinds of claims that the Court lacks jurisdiction to adjudicate under the *Rooker-Feldman* doctrine.[4]  *See, e.g.*, *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 275 (S.D.N.Y. 2018) ("As to the second and third elements, *Rooker-Feldman* bars claims that ask a court to find a defendant

---

[4] Although the Court does not expect a *pro se* litigant to have a sophisticated understanding of the differences between state and federal courts, it is perhaps relevant to this analysis that the plaintiff refers to the state court as the "lower court" in the complaint.  (ECF No. 1 at ¶¶ 87–89.)  The federal district court is not a superior court that sits in review of state court decisions.

11

lacked standing to pursue foreclosure in a prior state court action, because such claims require a court to sit in review of the state court judgment." (quoting *Pennicott v. JPMorgan Chase Bank. N.A.*, 16-CV-3044, 2018 WL 1891312, at *3 (S.D.N.Y. Apr. 18, 2018))). Thus, the Court lacks jurisdiction over each claim for injunctive or declaratory relief concerning the plaintiff's and the defendants' interest in the property.

"By contrast, the second and third *Rooker-Feldman* requirements are not met when a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries." *Limtung v. Thomas*, No. 19-CV-3646, 2021 WL 4443710, at *5 (E.D.N.Y. Sept. 28, 2021) (citing *Vossbrink*, 773 F.3d at 427); *accord Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (summary order); *Hylton*, 338 F. Supp. 3d at 275. As a result, "[t]he *Rooker–Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment." *Worthy-Pugh*, 664 F. App'x at 21. A plaintiff may therefore "seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment." *Dorce*, 2 F.4th at 104.

Liberally construed, the plaintiff's complaint reaches beyond the attack on the state court judgment and may be read as a claim for damages stemming from the defendants' allegedly fraudulent conduct in connection with the foreclosure proceeding. Specifically, the plaintiff claims that the defendants "knowingly presented false information" in order to secure the foreclosure judgment. (ECF. No. 1 ¶ 87.) Additionally, the plaintiff seeks compensatory and punitive damages related to this alleged fraud. (*Id.* ¶ 15.) Taken together, these allegations attempt to assert a fraud claim premised on the defendants' conduct in the foreclosure proceeding

12

that was then ratified by the state court's foreclosure judgment. A cause of action claiming that the defendants presented fraudulent material to the state court thus survives the *Rooker-Feldman* doctrine under the Second Circuit's precedent.[5]

## II.     Res Judicata

In the alternative, the defendants argue that the plaintiff's claims are precluded because they are *res judicata*. "When a defendant raises a *res judicata* defense on a motion to dismiss, a court may consider dismissal where all relevant facts are set forth in the complaint and in matters of which the [c]ourt may take judicial notice." *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-7235, 2022 WL 992472, at *4 (E.D.N.Y. Mar. 31, 2022) (internal quotations omitted); *see also Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 53 (2d Cir. 2008) ("When a defendant raises the affirmative defense of *res judicata* . . . and it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law, dismissal under Rule 12(b)(6) is appropriate." (internal quotations omitted)). Although the defendants analyze the affirmative defense in a single, conclusory paragraph, the Court concludes from a review of the complaint and the state court materials that any of the plaintiff's claims that are not barred by the *Rooker-Feldman* doctrine — that is, a claim alleging fraud — is precluded by *res judicata*.

---

[5] It does not appear that the factual allegations in the complaint are sufficient to state a fraud claim under the heightened pleading standard of Rule 9(b). *See Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (requiring a plaintiff asserting a fraud claim to allege facts showing: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff"). Further, the allegations in the complaint suggest that a fraud claim would be untimely under New York's statute of limitations. *See Sargiss v. Magarelli*, 12 N.Y.3d 527, 532, 909 N.E.2d 573 (2009) ("[A] fraud-based action must be commenced within six years of the fraud or within two years from the time the plaintiff discovered the fraud or could with reasonable diligence have discovered it." (internal quotation omitted)). These are deficiencies that the plaintiff will need to address in any amended complaint.

"Federal courts are required to 'give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so.'" *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 398 (2d Cir. 2022) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)) (alterations accepted). "New York courts apply a transactional analysis of *res judicata*, 'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (quoting *Burka v. N.Y. City Transit Auth.*, 32 F.3d 654, 657 (2d Cir.1994)), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). *Res judicata* bars a claim where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015).[6]

The first requirement is satisfied because the state court judgment of foreclosure and order of sale is an adjudication on the merits. *See, e.g.*, *Swiatkowski*, 745 F. Supp. 2d at 171 (explaining that state court Final Judgment of Foreclosure and Sale is adjudication on the merits in satisfaction of the first requirement of *res judicata*); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *5 (E.D.N.Y. Mar. 11, 2016) (same).

The second requirement — that the subsequent action involve the same parties or those in privity with them — presents a harder question. The New York Court of Appeals has explained that in this context, "privity is an amorphous concept not easy of application and includes those

---

[6] Courts in this district have consistently adopted this Second Circuit test to determine whether state court foreclosure judgments bar subsequent claims in federal court under *res judicata*. *See, e.g.*, *Swiatkowski*, 745 F. Supp. 2d at 171; *Kupfer v. Residential Mortg. Sol. LLC*, No. 19-CV-2738, 2020 WL 13572821, at *9 (E.D.N.Y. Dec. 1, 2020); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *5 (E.D.N.Y. Mar. 11, 2016). The Court agrees that the Second Circuit's test is useful in analyzing the issue under New York law.

14

who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and those who are coparties to a prior action." *Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001) (cleaned up).  The court must determine "whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances." *Id.* at 304–05.  And ultimately, "[t]he privity inquiry turns on whether, under the circumstances, the interests of the [party against whom *res judicata* is asserted] were adequately represented in the earlier action." *Kupfer v. Residential Mortg. Sol. LLC*, No. 19-CV-2738, 2020 WL 13572821, at *9 (E.D.N.Y. Dec. 1, 2020) (internal quotations and alterations omitted).

The primary complication here is that the plaintiff alleges that he was in privity with Watts, the defendant in the state court action, and was a successor in interest of the foreclosed property, (ECF No. 1 at ¶¶ 16, 42), while the defendants maintain — as they did in the state court action — that the plaintiff has no interest in the property whatsoever and therefore had no right to intervene in the state court proceeding.  (ECF. No. 17-2 at 5.)  As a result, the facts alleged in the complaint, when taken as true, support the application of *res judicata*, and the defendants' briefing implies the opposite conclusion.  Although the defendants claims that the plaintiff had no standing to intervene in the foreclosure proceeding, the plaintiff did, in fact, try to do so.  He was represented by counsel, who filed multiple orders to show cause, was evidently allowed to present his position at oral argument, and even succeeded in convincing the state court to stay temporarily the final sale of the property on at least one occasion while he briefed his arguments.  He also successfully asserted a claim to the surplus funds from the sale of the property in foreclosure.  Regardless of whether the plaintiff was technically in privity with Watts, the

15

plaintiff's interests were adequately represented in the prior proceeding, and therefore the second requirement is satisfied.[7]

Finally, the plaintiff's fraud claims arise from the same facts as the state court foreclosure action. "New York adheres to a transactional analysis of *res judicata*, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). The plaintiff's fraud claim challenges the validity of the mortgage documents and the defendants' ability to enforce their rights under those documents. Such claims cannot be separated from the underlying foreclosure action, which was itself premised on the legitimacy and enforceability of the very same mortgage documents, which were considered and relied on by the court-appointed referee and the court. Under this test, the plaintiff's claims should have or could have been raised in the previous action.

In sum, even if the plaintiff's complaint stated a claim for fraud that the Court had jurisdiction to consider, it is *res judicata*.

---

[7] Each defendant is in privity with Argent Mortgage Company, LLC, the plaintiff in the state court foreclosure proceeding, and thus may assert the affirmative defense. *See, e.g.*, *Fequiere*, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) ("Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*.").

## CONCLUSION

For these reasons, the defendants' motion to dismiss is granted. In an abundance of caution and in light of the plaintiff's *pro se* status, the Court grants leave to amend the complaint. The plaintiff has thirty days to file an amended complaint, which must be captioned Amended Complaint and bear the same docket number as this order: 23-CV-8860 (AMD) (JAM).

If the plaintiff chooses to file an amended complaint, he must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires that a complaint provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Further, if the plaintiff chooses to reassert his fraud claim, he is advised that such a claim is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See also Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (requiring a plaintiff asserting a fraud claim to allege facts showing: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff"). Additionally, the plaintiff must establish that his fraud claim is timely under New York law. *See Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009) ("[A] fraud-based action must be commenced within six years of the fraud or within two years from the time the plaintiff discovered the fraud or could with reasonable diligence have discovered it." (internal quotation omitted)).

The amended complaint completely replaces the original complaint. That is, the amended complaint must stand on its own without reference to the original complaint. All further proceedings will be stayed for thirty days. If the plaintiff does not file an amended complaint within the time allowed or show good cause for an extension to file the amended complaint, the

17

Court will direct the Clerk of Court to enter judgment and close this case. The plaintiff may contact the City Bar Justice Center's Federal Pro Se Legal Assistance Project at (212) 382-4729 for free, confidential, limited-scope legal assistance.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       November 4, 2024

18