UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                             :
**CURNAL LINDOW**,                                           :
                                                             :
                                    Plaintiff,               :
                                                             :    **MEMORANDUM DECISION AND**
                                                             :    **ORDER**
                        – against –                          :
                                                             :    23-CV-8860 (AMD) (JAM)
**ARGENT MORTGAGE COMPANY, LLC;**                            :
**AMERIQUEST MORTGAGE COMPANY;**                             :
**ARGENT SECURITIES INC.; DEUTSCHE**                         :
**BANK NATIONAL TRUST COMPANY AS**                           :
**TRUSTEE FOR SECURITIZED TRUST**                            :
**ASSET BACKED PASS THROUGH**                                :
**CERTIFICATES 2003-W10 TRUST, AND**                         :
**DOES 1 THROUGH 10,**                                       :
                                                             :
                                    Defendants.              :
------------------------------------------------------------- X
**ANN M. DONNELLY**, United States District Judge:

      This action arises out of the sale in foreclosure of a property at 936 Atlantic Avenue,

Brooklyn, New York 11238, more than fifteen years ago.  The plaintiff asserts that the state court

foreclosure proceedings were based on a fraudulently conveyed and improperly assigned

mortgage and that he still owns the property.  The amended complaint names defendants

allegedly involved in mortgaging the property and in the foreclosure proceedings, including

Argent Mortgage Company, LLC; Ameriquest Mortgage Company; Argent Securities, Inc.;

Deutsche Bank National Trust Company as Trustee for Securitized Trust Asset Backed Pass

Through Certificates 2003-W10 Trust ("DBNTC"); GALF Holdings, LLC;[1] and numerous Doe

defendants.  (ECF No. 24.)

---

[1] Defendant GALF Holdings, LLC has not appeared in the case, and the plaintiff has not requested a
certificate of default.

Argent and DBNTC ("the defendants") moved to dismiss the amended complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 28, 29, 30.) DBNTC also asks the Court to vacate the Clerk of Court's entry of default. (ECF No. 30; *see also* ECF No. 16.)

For the reasons that follow, DBNTC's motion to vacate the entry of default is granted, as are the motions to dismiss.

## BACKGROUND

The facts are based on the plaintiff's amended complaint and its attachments,[2] as well as documents of which the Court may take judicial notice, including documents filed in related state court proceedings. *See, e.g.*, *Murphy v. Riso*, No. 11-CV-873, 2012 WL 94551, at *4 (E.D.N.Y. Jan. 12, 2012). The Court detailed the facts when it dismissed the original complaint, and assumes familiarity with its prior opinion. (*See* ECF No. 24 at 2–6.) As always, in deciding a motion to dismiss, the Court accepts as true the factual allegations in the amended complaint and draws all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

## I.   The State Court Foreclosure Proceeding[3]

On November 12, 2004, Argent Mortgage Company sought to foreclose on a property at 936 Atlantic Avenue, Brooklyn, New York 11238, and initiated a foreclosure action in New

---

[2] The Court dismissed the original complaint with leave to amend. (ECF No. 24.) The plaintiff attached 66 pages of exhibits to the original complaint (ECF No. 1-2), but did not attach them to the amended complaint, although he does refer to them. The Court considers these documents as if they had been attached to the amended complaint.

[3] The state court proceeding predated mandatory electronic filing and the entire docket has not yet been digitized. Many of the filings, however, including all of those from which these facts are taken, are accessible through the Kings County Clerk's Office Case Search feature, available at: https://iapps.courts.state.ny.us/webcivil/kingscc/indexSearch?6-2.-formIndexSearch.

York Supreme Court, Kings County, under index number 37091/2004. Argent alleged that Grittley Watts, who signed the mortgage as the borrower (*see* ECF No. 1-2 at 31–55), missed several scheduled payments, and that Argent properly served Watts with a notice of default and gave him an opportunity to cure the default. *Argent Mortgage Company, LLC v. Watts*, Ind. No. 37091/2004 (Sup. Ct., Kings Cnty.), Complaint (Nov. 6, 2004). Argent also represented that it had filed a Notice of Pendency at least 20 days before initiating the foreclosure action. Pursuant to N.Y.C.P.L.R. § 6501(a), the filing of the Notice of Pendency serves as "constructive notice, from the time of filing of the notice only, to a purchaser from, or incumbrancer against, any defendant named in a notice of pendency." *Id.*

In the months that followed, the state court appointed a referee to investigate the foreclosure claims and propose a sale plan. *Id.* Order (Feb. 23, 2005). The state court accepted the referee's report and entered a judgment of foreclosure and sale, instructing the referee to sell the property. *Id.* Judgment of Foreclosure and Sale (June 16, 2005). The referee scheduled a sale at auction for May 11, 2006. *Id.* Referee's Report of Sale (Feb. 20, 2007).

On May 3, 2006, about a week before the scheduled auction of the property, the plaintiff, represented by counsel, filed an order to show cause and an emergency application in the state court proceeding, asking the court to enjoin the pending auction and sale. *Id.* Proposed Order to Show Cause (May 3, 2006). In support of this request, the plaintiff submitted an affidavit in which he stated that the "property represent[ed] a substantial portion of [his] net worth." *Id.* Affidavit of Curnal Lindow in Support of Order to Show Cause at ¶ 2. He also affirmed that he had a contract in place to sell the property to a purchaser, which would allow him to pay the balance of the Watts mortgage due to Argent in the foreclosure action. *Id.* at ¶ 3. Further, his counsel submitted an affirmation representing that:

> Curnal Lindow is the true owner for the property of 936 Atlantic Avenue, Brooklyn, New York. The subject property was deeded to Grittley Watts for the purpose of refinancing due to his good credit by Curnal Lindow. However, Curnal Lindow is recognized by Grittley Watts as the true owner and the person responsible for paying off its debts.

*Id.* Emergency Affirmation of Kecia J. Weaver in Support of Order to Show Cause at ¶ 1 (May 9, 2006).

The state court entered an order to show cause, as the plaintiff requested, which allowed the auction to proceed on May 11, but stayed the transference of the deed indefinitely. *Id.* Order to Show Cause (May 9, 2006). The referee sold the property to the highest bidder — the defendant Galf Holdings LLC — at the auction on May 11, 2006. *Id.* Referee's Report of Sale (Feb. 20, 2007). In the following weeks, Argent and Galf Holdings filed opposition papers, asking the court to vacate the stay. *Id.* Affirmation of Karen B. Olson in Opposition to Order to Show Cause (May 25, 2006); *id.* Affirmation of Jay S. Markowitz in Opposition (June 6, 2006). Both parties argued that the plaintiff did not own the property and was not a named defendant in the foreclosure action and therefore had no standing to intervene in the proceeding. *Id.* The court discussed the issue with the parties at a status conference in late September 2006. Two weeks later, on October 13, 2006, the court vacated the May 9th stay and directed the referee to transfer the deed. *Id.* Order Vacating Stay (Oct. 13, 2006).

On November 9, 2006, the plaintiff filed another order to show cause. *Id.* Order Denying Order to Show Cause (Nov. 13, 2006). On November 10, 2006, the court stayed the proceedings again. *Id.* Just a few days later, however, the court vacated that stay, which appears to have ended the plaintiff's attempt to assert ownership over the property. *Id.* The referee executed and

delivered a deed of conveyance to the purchaser. *Id.* Referee's Report of Sale (Feb. 20, 2007).[4]

The referee filed the report of sale on March 13, 2007, which the state court confirmed and

ratified on November 19, 2007.

After the sale, the court appointed a different referee to distribute the surplus money, and

"to ascertain and report the amount due to Curnal Lindow." *Id.* Decision and Order (Nov. 1,

2007). The plaintiff filed a notice of claim to the surplus money on March 19, 2007, asserting

his interest as the "grantor" of the property from Watts. *Id.* Notice of Claim (Mar. 19, 2007).

The referee found that the plaintiff was entitled to $67,974.05 minus $25,320.78 in liens owed,

or $42,653.27, and the court issued an order confirming the referee's report. *Id.* Order

Confirming Referee's Report and Ordering Distribution of Surplus Monies (Mar. 11, 2009).

The plaintiff alleges that DBNTC owns the "Watts Intangible Obligation (the debt)," and

that Argent "sold all ownership interest" in the debt to DBNTC "on or about January 09, 2004,

the Closing Date of the Asset Backed Pass Through Certificates 2003-W10 Trust." (ECF No.

1-2 at 8.) The plaintiff maintains that DBNTC has "made and continue[s] to make claims of

ownership" in the debt and to "exercis[e] rights of ownership over [the debt] and the payment

stream." (*Id.* at 9.) He claims, though, that "all three parts of the Watts Mortgage Loan as a

whole" must have been transferred with the mortgage and note through "a chain of entities" for

DBNTC to have properly received the ownership interest that the plaintiff contends the trust has

been exercising. (*Id.* at 10.) Argent, however, transferred only the "Watts Intangible

Obligation" and not the note. (*Id.* at 12.) In essence, the plaintiff avers that DBNTC is operating

as if it owns an interest in the mortgage, which was never correctly transferred to it.

---

[4] The court had already granted GALF Holdings LLC the right to assign its bid to a separate purchaser at the same purchase price when the referee transferred the deed of conveyance.

## II.     Federal Court Action

The plaintiff filed this action on December 1, 2023.  (ECF No. 1.)  On March 5, 2024, the plaintiff requested a certificate of default as to DBNTC, which the Clerk of the Court entered on April 3, 2024.  (ECF Nos. 11, 16.)  Meanwhile, Argent moved to dismiss the original complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 17.)  On November 4, 2024, the Court dismissed the complaint, but gave the plaintiff permission to file an amended complaint.  (ECF No. 23.)

The plaintiff filed an amended complaint on December 5, 2024.  (ECF No. 24.)  Most of the allegations in the amended complaint are identical to those in the original complaint.  In addition, the plaintiff claims that the May 11, 2006 sale should not have happened because the plaintiff was a party to an ongoing bankruptcy proceeding (*id.* ¶¶ 48–50); that GALF Holding, the successful bidder for the property at the foreclosure sale, did not follow the appropriate procedures in finalizing its purchase, which voided the sale (*id.* ¶¶ 51–53); and that the plaintiff's attorney sent a "check to the mortgage company for the purpose of paying off any loan balance in full" on November 22, 2006 (*id.* ¶ 54).  He asserts three causes of action: (1) a Fourteenth Amendment claim, alleging wrongful foreclosure and deprivation of his property (*id.* ¶¶ 59–77); (2) a request for a declaratory judgment that he is the equitable owner of the property (*id.* ¶¶ 78–84); and (3) a claim that the defendants presented false and fraudulent information to the state court (*id.* ¶¶ 85–102).  The plaintiff seeks monetary and declaratory relief.  (*Id.* at 16–17.)

On December 23, 2024, counsel for DBNTC appeared in this case.  (ECF No. 26.) Argent and DBNTC filed separate motions to dismiss, and DBNTC moved to vacate the entry of default.  (ECF Nos. 28–30.)  The plaintiff opposed both motions.  (ECF No. 32.)

6

## LEGAL STANDARD

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and also moves to dismiss on other grounds, a reviewing court should consider the Rule 12(b)(1) motion first." *WG Woodmere LLC v. Inc. Vill. of Woodsburgh*, No. 23-CV-6966, 2025 WL 1663600, at *4 (E.D.N.Y. June 12, 2025) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal citation and quotations omitted).  A district court must dismiss a claim for want of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Where, as here, "a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  Nevertheless, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry," *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quotation omitted), *aff'd*, 561 U.S. 247 (2010), and "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a plaintiff need not

set forth "detailed factual allegations," a complaint that includes only "labels and conclusions" or

"a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555.  When faced with a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations in the

complaint as true and draw[s] all inferences in the plaintiff's favor." *Walker v. Schult*, 717 F.3d

119, 124 (2d Cir. 2013).

The Court "liberally construe[s]" *pro se* filings and evaluates them by "less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also McCray v. Lee*, 963

F.3d 110, 117 (2d Cir. 2020).  The plaintiff's claims must be "read to raise the strongest

arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir.

2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

## DISCUSSION

## I.  DBNTC's Motion to Vacate Entry of Default

"[W]hen a certificate of default has been entered by the Clerk of the Court, but no default

judgment has been entered, then Rule 55(c) applies." *U.S. Commodity Futures Trading Comm'n

v. LaMarco*, No. 17-CV-4087, 2022 WL 18859042, at *3 (E.D.N.Y. Dec. 27, 2022) (citing

*Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981), *report and recommendation adopted*, 2023

WL 2495869 (E.D.N.Y. Mar. 14, 2023).  Under these circumstances, a court "may set aside an

entry of default for good cause." Fed. R. Civ. P. 55(c).  "Because Rule 55(c) does not define the

term 'good cause,' the Second Circuit has established three criteria that must be assessed in order

to decide whether to relieve a party from default or from a default judgment." *Bricklayers &

Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779

F.3d 182, 186 (2d Cir. 2015) (alterations adopted) (quoting *Enron Oil Corp. v. Diakuhara*, 10

F.3d 90, 96 (2d Cir. 1993). They are: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Id.* (quoting *Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir. 2013). Courts may also consider other equitable factors, including "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54 (E.D.N.Y. 2022) (quoting *Keebler v. Rath*, 405 F. App'x 517, 519 (2d Cir. 2010)).

"'It is well established that default judgments are disfavored,' and that '[a] clear preference exists for cases to be adjudicated on the merits.'" *Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 77 (E.D.N.Y. 2010) (quoting *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001)). "Because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be . . . vacated, the doubt should be resolved in favor of the defaulting party." *Henry v. Oluwole*, 108 F.4th 45, 51 (2d Cir. 2024) (alteration adopted) (quoting *Enron Oil*, 10 F.3d at 96). "[C]ourts addressing motions to set aside default under Rule 55(c) are extremely forgiving to the defaulting party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps." *United States v. Starling*, 76 F.4th 92, 100 (2d. Cir 2023) (quotations and citations omitted).

DBNTC argues that the factors weigh in favor of vacating the default. First, it claims that the default was not willful. DBNTC submits two declarations by Ronaldo Reyes, a Vice President at DBNTC, in support of this argument. (*See* ECF Nos. 31, 36.) Reyes explains that "[w]hen DBNTC, as a trustee of an RMBS trust, is served with a summons and complaint in loan-specific servicing-related litigation, DBNTC, as trustee, typically tenders the defense of the

litigation to the applicable trust's loan servicer pursuant to the agreements that govern the trust." (ECF No. 31 ¶ 4.)  DBNTC then expects the servicer to retain counsel to defend the trustee.  (*Id.*)

The plaintiff served the original summons and complaint on DBNTC in December 2023. (*Id.* ¶ 5.)  DBNTC says that is tendered the complaint to the loan servicer the next day, but the servicer responded that it could not find "any records of servicing any loans secured by the Subject Property." (*Id.*)  Neither DBNTC nor the loan servicer did anything more to defend against the plaintiff's action at that time.

On December 13, 2024, DBNTC received a copy of the amended complaint.  (*Id.*) DBNTC then contacted outside counsel, who informed DBNTC of the entry of default.  (*Id.*; ECF No. 36 ¶ 5.)  Counsel for DBNTC appeared in this action on December 23, 2024.  (ECF No. 26.)  DBNTC maintains that it did not receive any notice or service of the Clerk's entry of default.  (ECF No. 36 ¶¶ 6–7.)  The plaintiff, however, filed a certificate of service dated March 28, 2024, with his request for entry of default.  (ECF No. 11 at 5.)  Reyes does not say whether DBNTC discussed the issue with the loan servicer after receiving the amended complaint.

Under these circumstances, DBNTC's default was not willful.  The defendant evidently followed its standard procedures in tendering the complaint to the loan servicer.  While it might have been careless not to follow up with the loan servicer, the default was not "egregious" and DBNTC has explained it "satisfactorily." *Cf. Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund*, 779 F.3d at 186 (holding that default was willful when the conduct was "more than merely negligent or careless," but "instead 'egregious and . . . not satisfactorily explained.'" (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998))).  Moreover, counsel for DBNTC appeared quickly once they became aware of the default.

Second, as explained below, DBNTC has meritorious defenses, which weighs in favor of vacating the entry of default, because of the preference that courts adjudicate cases on the merits. Finally, "[t]he delay occasioned thus far by [DBNTC's] default, spanning only a few months, has not been so prolonged as to raise a serious risk of lost evidence or increased difficulties of discovery." *Westchester Fire Ins. Co. v. Tyree Serv. Corp.*, 304 F.R.D. 111, 114 (E.D.N.Y. 2014). This is especially true in this case, where the plaintiff's underlying allegations arise from incidents that happened nearly two decades ago.

Accordingly, after weighing the relevant factors, DBNTC's motion to vacate the entry of default is granted.[5]

## II. Subject Matter Jurisdiction – *Rooker-Feldman* Doctrine

Argent and DBNTC argue that the Court does not have subject matter jurisdiction over the plaintiff's claims under the *Rooker-Feldman* doctrine. (ECF No. 28-5 at 5–7, ECF No. 30 at 6–7 & n.2.) "Where a federal suit follows a state suit, the former may be prohibited by the so-called *Rooker-Feldman* doctrine in certain circumstances." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). The doctrine arises from two Supreme Court cases decided decades apart, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of*

---

[5] DBNTC's dismisses the *pro se* plaintiff's argument — that the 'Certificate of Default was correctly entered by the Clerk of Court — as "a conclusory statement…which plainly fails to rebut the Trustee's argument." (ECF No. 35 at 5.) In fact, DBNTC is mistaken, and the plaintiff is correct. As the plaintiff points out, DBNTC confuses the requirements for the Clerk's entry of a certificate of default with the requirements for the Clerk's entry of a default judgement. (ECF No. 32 at 2 ("Defendant makes [an] argument in its motion regarding a default judgment. The requirements for a default judgment are not the same as the requirements for a Certificate of Default.").) Indeed, the cases on which DBNTC relies discuss the differences between the two. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (explaining that an entry of default is an unappealable interlocutory act, whereas a default judgement is an appealable final judgement); *Nevelskiy v. Advanced Pro. Grp., Inc.*, 735 F. Supp. 3d 148, 155 (E.D.N.Y. 2024) (explaining the two-step process for obtaining a default judgement under Rule 55, the first step of which is securing the entry of default by the Clerk of Court "after an affidavit or other evidence shows that the 'party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend'" (quoting Fed. R. Civ. P. 55(a)).

*Appeals v. Feldman*, 460 U.S. 462 (1983), and emphasizes the principle "that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock*, 422 F.3d at 85). In practice, this means that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock*, 422 F.3d at 85.

However, as the Supreme Court has cautioned, the doctrine is narrowly "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Second Circuit has, in turn, established "four requirements for the application of *Rooker-Feldman*: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (cleaned up) (quoting *Hoblock*, 422 F.3d at 85). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Hoblock*, 422 F.3d at 85. "Although all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar . . . the second requirement — that the plaintiff complains of an injury caused by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive." *Dorce v. City of New York*, 2 F.4th 82, 101–02 (2d Cir. 2021) (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)). As relevant here, courts in this circuit have held consistently that direct challenges to state court judgments of foreclosure are barred by the *Rooker-Feldman*

doctrine. *See, e.g.*, *Riley v. Comm'r of Fin.*, 618 F. App'x 16, 17 (2d Cir. 2015) ("[A]n action seeking a declaration of property ownership after loss of title pursuant to a state-court foreclosure judgment [is] barred by Rooker-Feldman."); *Vossbrinck*, 773 F.3d at 427 ("To the extent [the plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [the plaintiff's] claim.").

### a.    The Procedural Requirements

As an initial matter, this action meets procedural requirements of the *Rooker-Feldman* doctrine. The fourth requirement is clearly satisfied, as the state court entered the judgment of foreclosure almost 20 years before the plaintiff commenced this proceeding. However, whether the plaintiff lost in state court is a closer question. The state court docket and filings show that the plaintiff was not a named party in the state court foreclosure proceeding. The first named defendant in that proceeding was Grittley Watts, and eventually six other defendants were added to the caption as "co-tenants in possession of a portion of the mortgaged premises." The plaintiff was not among this group. This fact tends to undermine the defendants' argument that the *Rooker-Feldman* doctrine deprives the Court of jurisdiction, but it is not decisive.

The Second Circuit addressed a similar issue in *Dorce v. City of New York*, 2 F.4th 82 (2021). There, the court rejected plaintiffs' argument that *Rooker-Feldman* did not apply because they were not named as defendants in the state court *in rem* foreclosure action. *Id.* at 102–03. While conceding that the argument had "some logical force," the Second Circuit concluded that "[t]he mere fact that Plaintiffs were not named parties to the state action against the property does not abrogate the operation of *Rooker-Feldman*." *Id.* at 102. Holding otherwise would allow any party with an interest in the property who is not named as a defendant in

foreclosure proceedings to attack state court judgments in federal court. *Id.* This case is analogous.

Moreover, unlike the *Dorce* plaintiffs, who did not appear or defend their interest in the foreclosure action, the plaintiff here was an active litigant in the state court proceedings, even though he was not a party. He filed multiple orders to show cause asserting his interest in the property and succeeded in convincing the court to stay temporarily the transference of sale at least once. He also filed a successful notice of claim for the surplus proceeds of the sale at auction, which he received. And though he argued against foreclosure and sale at auction, the state court entered that judgment nonetheless. "[T]he foreclosure judgment was indisputably adverse to" the plaintiff here, *Barlow v. Nationstar Mortg. LLC*, No. 21-1483, 2022 WL 950949, at *2 n.3 (2d Cir. Mar. 30, 2022) (summary order), and the first requirement is therefore satisfied.

### b.    The Substantive Requirements

The Second Circuit has held that the substantive requirements — and specifically the second requirement that the plaintiff complains of an injury caused by a state-court judgment — are the "core requirement[s] from which the other *Rooker-Feldman* requirements derive." *Sung Cho*, 910 F.3d at 646 (alterations adopted) (quoting *Hoblock*, 422 F.3d at 87). In order to determine whether "federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments," courts must consider whether "the third party's actions are produced by a state-court judgment" or whether they are "simply ratified, acquiesced in, or left unpunished by it." *Id.* (internal quotations omitted).

Here, most — but not all — of the plaintiff's alleged injuries are directly caused by the state court foreclosure order. The Second Circuit has explained that a plaintiff who asks the

court to "grant him title to his property because the foreclosure judgment was obtained fraudulently" is claiming an injury caused by a state court judgment of foreclosure.  *Vossbrinck*, 773 F.3d at 427; *see also Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (summary order).  This is precisely the relief the plaintiff asks the Court to grant in his cause of action for a declaratory judgment; he asks the Court to declare that he is "the equitable owner of the subject property."  (ECF No. 24 ¶ 83.)  More fundamentally, the plaintiff also alleges that "the foreclosing entity lacked the requisite standing to foreclose on the subject property" and "had no authority to sell the subject property at foreclosure sale to the highest bidder," rendering the foreclosure sale "void as a matter of law."  (*Id.* ¶¶ 73–76.)  These claims are exactly the kinds of claims that the Court lacks jurisdiction to adjudicate under the *Rooker-Feldman* doctrine.  *See, e.g.*, *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 275 (S.D.N.Y. 2018) ("As to the second and third elements, *Rooker-Feldman* bars claims that ask a court to find a defendant lacked standing to pursue foreclosure in a prior state court action, because such claims require a court to sit in review of the state court judgment." (quoting *Pennicott v. JPMorgan Chase Bank. N.A.*, 16-CV-3044, 2018 WL 1891312, at *3 (S.D.N.Y. Apr. 18, 2018))).  Thus, the Court lacks jurisdiction over each claim for injunctive or declaratory relief concerning the parties' interests (or lack thereof) in the property.

"By contrast, the second and third *Rooker-Feldman* requirements are not met when a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries." *Limtung v. Thomas*, No. 19-CV-3646, 2021 WL 4443710, at *5 (E.D.N.Y. Sept. 28, 2021) (citing *Vossbrink*, 773 F.3d at 427); *accord Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (summary order); *Hylton*, 338 F. Supp. 3d at 275.  As a result, "[t]he *Rooker–Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming

from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment." *Worthy-Pugh*, 664 F. App'x at 21. A plaintiff may therefore "seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment." *Dorce*, 2 F.4th at 104.

Liberally construed, the plaintiff's complaint reaches beyond the attack on the state court judgment and may be read as a claim for damages stemming from the defendants' allegedly fraudulent conduct in connection with the foreclosure proceeding. Specifically, the plaintiff alleges that the defendants "knowingly presented false information" to secure the foreclosure judgment, which "caus[ed] Plaintiff damages." (ECF. No. 24 ¶¶ 86, 102.) Additionally, the plaintiff seeks compensatory and punitive damages related to this alleged fraud. (*Id.* at ¶ 15.)

Taken together, these allegations can be construed as a fraud claim premised on the defendants' conduct in the foreclosure proceeding that the state court's foreclosure judgment ratified. A cause of action claiming that the defendants presented fraudulent material to the state court thus survives the *Rooker-Feldman* doctrine under the Second Circuit's precedent.

Accordingly, the Court does not have subject matter jurisdiction over the plaintiff's first two causes of action, which attack the state court judgment directly and for which he seeks injunctive relief. However, the Court may adjudicate the plaintiff's third cause of action, which the Court construes as a common law fraud claim.[6]

---

[6] DBNTC also argues that the plaintiff lacks standing "because he has not shown that the Trustee's actions caused the alleged injury." (ECF No. 30 at 8.) According to DBNTC, the plaintiff "did not plead facts indicating the Trustee had interest in the loan or any role or involvement in the foreclosure sale of Plaintiff's property, the action that allegedly caused the purported injury." (*Id.*) DBNTC conflates the pleading standard for standing and merits-issues. *See Murray v. Newrez LLC*, No. 24-CV-6160, 2025 WL 1158090, at *3 n.9 (E.D.N.Y. Apr. 21, 2025); *Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 472–73 (S.D.N.Y. 2021). "[T]he standard for Article III standing is not whether the alleged injury is *plausibly* fairly traceable, but, rather, whether the injury is *possibly* fairly traceable."

**III.    Failure to State a Claim**

Even if the Court has subject matter jurisdiction, Argent and DBNTC argue that the plaintiff's third cause of action, which is styled as a claim for "fraud upon the court," should be dismissed for failure to state a claim.  (ECF No. 28-5 at 8; ECF No. 30 at 7.)

The defendants cite *Mazzei v. The Money Store*, in which the Second Circuit held that "to sustain an independent action for fraud on the court, a plaintiff must prove by clear and convincing evidence, that the defendant interfered with the judicial system's ability to adjudicate impartially and that the acts of the defendant must have been of such a nature as to have prevented the plaintiff a case or defense."  62 F.4th 88, 93–94 (2d Cir. 2023).  But that case is not dispositive in this case, because although the plaintiff labels his claim as one for "fraud on the court," the Court construes it as a common law fraud claim against the defendants,  not a claim for fraud on the court, which would certainly fail.[7]  An independent action for fraud on the court would be inappropriate in this procedural posture, and the Court therefore cannot construe the *pro se* complaint to state that claim.  The typical fraud-on-the-court claim arises in cases like *Mazzei*; the plaintiff brings an independent action for fraud on the court when he is seeking relief from a final judgment under Federal Rule of Civil Procedure 60(b) and (d).  *See, e.g.*, 62 F.4th at

---

*Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 156 (S.D.N.Y. 2018) (emphases in original); *see also Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 111 (2d Cir. 2018) ("[T]o plead standing, the pleader need only show that allowing her to *raise* her claim in federal court would not move so beyond the court's ken as to usurp the power of the political branches.")  It also misstates the plaintiff's factual allegations.  The plaintiff alleges that DBNTC owns the "Watts Intangible Obligation (the debt)," and that Argent "sold all ownership interest in the debt to DBNTC "on or about January 09, 2004, the Closing Date of the Asset Backed Pass Through Certificates 2003-W10 Trust."  (ECF No. 1-2 at 8.)  The plaintiff further alleges that DBNTC has "made and continue[s] to make claims of ownership" in the debt and to "exercis[e] rights of ownership over [the debt] and the payment stream."  (*Id.* at 9.)  This is sufficient to satisfy the standing requirement.

[7] The Court's construction is not news, since it construed this claim the same way in its previous opinion.  (ECF No. 23 at 12–13.)  Indeed, the Court enumerated the elements of a common law fraud claim and the statute of limitations applicable to such a claim twice.  (*Id.* at 13 n.6, 17.)

93.  Those provisions allow a court to "entertain an independent action to relieve a party from a judgment, order, or proceeding" because of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3), (d)(1).[8]  But the Supreme Court has said that it is "very doubtful" that a federal court may enjoin a fraudulent state court judgement.  *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 136 (1941); *see also* 28 U.S.C. § 2283.

In any event, the plaintiff does not state a fraud claim against the defendants under the heightened pleading standard of Rule 9(b).  In order to establish a common law claim for fraud under New York law, a plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413 (1996)).

The plaintiff does not plead with the requisite specificity that DBNTC made material misrepresentations or omissions.  Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted).  While the plaintiff maintains that DBNTC fraudulently claimed to own the debt, he does not specify to whom or by whom those claims

---

[8] The Court does not construe the plaintiff's claim as a request under Rule 60(d)(3), which allows a court to "set aside a judgement for fraud on the court."  *See* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2870 (3d ed.) ("The remedy for most cases of fraud must continue to be by motion under Rule 60(b)(3) or by an independent action, subject to the procedural limitations applicable to those remedies.").  The defendants do not seem to argue that the Court should construe the claim as a Rule 60(d)(3) motion.

were made or any ways in which DBNTC fraudulently used the ownership interest.  Nor does he claim that DBNTC fraudulently prepared or submitted any documents to the state court.

Moreover, the plaintiff does not sufficiently plead the fourth or fifth elements of a fraud claim.  Even if the plaintiff alleges that Argent and DBNTC made actionable misstatements or omissions, he does not allege that he relied on them or that his reliance caused his injury.  To the contrary, the plaintiff did everything he could to contest what he believed to be a fraudulent foreclosure sale.  Instead, the plaintiff pleads that other people and entities — including the Referee, who managed the sale, the successful bidder's attorneys, and the state court — relied on the defendants' fraudulent representations.  (*See* ECF No. 24 ¶¶ 88–101.)  However, "where a non-plaintiff third party is alleged to have relied on the misrepresentations in a manner that caused injury to the plaintiff," there is no actionable claim for fraud.  *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016); *see also Rockaway Beverage, Inc. v. Wells Fargo & Co.*, 378 F. Supp. 3d 150, 168 (E.D.N.Y. 2019).

Accordingly, the plaintiff has failed to state a fraud claim.

## IV.    Statute of Limitations

Although none of the defendants raise a statute of limitations defense to the fraud claim, "a court may raise it *sua sponte* when 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'"  *Weaver v. Boriskin*, 751 F. App'x 96, 98–99 (2d Cir. 2018) (quoting *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011)).  Under New York law, "a fraud-based action must be commenced within six years of the fraud or within two years from the time the plaintiff discovered the fraud or could with reasonable diligence have discovered it."  *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009) (quoting N.Y.C.P.L.R 213 (8)).

The complaint alleges that the defendants committed fraud in the state court foreclosure proceedings in 2006 and 2007. The plaintiff's fraud claim is therefore more than 10 years too late. Nor may the plaintiff argue that he only discovered the fraud within two years of filing this action, since he raised the same allegations in the state court proceeding as it was unfolding. Accordingly, the plaintiff's fraud claim is untimely, which provides an alternative basis for dismissal.

## V.    *Res Judicata*

In the alternative, Argent argues that the plaintiff's claims are precluded because they are *res judicata*. "When a defendant raises a *res judicata* defense on a motion to dismiss, a court may consider dismissal where all relevant facts are set forth in the complaint and in matters of which the [c]ourt may take judicial notice." *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-7235, 2022 WL 992472, at *4 (E.D.N.Y. Mar. 31, 2022) (internal quotation and citation omitted); *see also Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 53 (2d Cir. 2008) ("When a defendant raises the affirmative defense of *res judicata* . . . and it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law, dismissal under [Rule] 12(b)(6) is appropriate." (internal quotation and citation omitted)).

"Federal courts are required to 'give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so.'" *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 398 (2d Cir. 2022) (alteration adopted) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). "New York courts apply a transactional analysis of *res judicata*, 'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (quoting *Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657 (2d Cir.1994)), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). *Res judicata* bars a

claim where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alteration adopted) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)).[9]

The first requirement is satisfied because the state court judgment of foreclosure and order of sale is an adjudication on the merits. *See, e.g.*, *Swiatkowski*, 745 F. Supp. 2d at 171 (explaining that state court Final Judgment of Foreclosure and Sale is adjudication on the merits in satisfaction of the first requirement of *res judicata*); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *5 (E.D.N.Y. Mar. 11, 2016) (same).

The second requirement — that the subsequent action involve the same parties or those in privity with them — presents a harder question. The New York Court of Appeals has explained that in the context of collateral estoppel, "privity is an amorphous concept not easy of application and includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and those who are coparties to a prior action." *Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001) (cleaned up). The Court must determine "whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances." *Id.* at 304–05. And ultimately, "[t]he privity inquiry turns on whether, under

---

[9] Courts in this district have consistently adopted this Second Circuit test to determine whether state court foreclosure judgments bar subsequent claims in federal court under *res judicata*. *See, e.g.*, *Swiatkowski*, 745 F. Supp. 2d at 171; *Kupfer v. Residential Mortg. Sol. LLC*, No. 19-CV-2738, 2020 WL 13572821, at *9 (E.D.N.Y. Dec. 1, 2020); *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *5 (E.D.N.Y. Mar. 11, 2016). The Court agrees that the Second Circuit's test is useful in analyzing the issue under New York law.

the circumstances, the interests of the [party against whom *res judicata* is asserted] were adequately represented in the earlier action." *Kupfer v. Residential Mortg. Sol. LLC*, No. 19-CV-2738, 2020 WL 13572821, at *9 (E.D.N.Y. Dec. 1, 2020) (internal quotations and alterations omitted).

The plaintiff alleges that he was in privity with Watts, the defendant in the state court action, and was a successor in interest of the foreclosed property. (ECF No. 24 at ¶¶ 16, 42.) As a result, the facts alleged in the amended complaint, when taken as true, support the application of *res judicata*. Moreover, the plaintiff intervened in the state court foreclosure proceeding. He was represented by counsel, who filed multiple orders to show cause presented the plaintiff's position at oral argument, and even succeeded in convincing the state court to grant at least one temporary stay of the final sale of the property. He also successfully asserted a claim to the surplus funds from the sale of the property in foreclosure. Regardless of whether the plaintiff was technically in privity with Watts, his interests were adequately represented in the prior proceeding, and therefore the second requirement is satisfied.[10]

Finally, the plaintiff's fraud claims arise from the same facts as the state court foreclosure action. "New York adheres to a transactional analysis of *res judicata*, 'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burka*, 32 F.3d at 657 (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). The plaintiff's fraud claim

---

[10] Each Argent-entity defendant is in privity with Argent Mortgage Company, LLC, the plaintiff in the state court foreclosure proceeding, and thus may assert the affirmative defense. *See, e.g.*, *Fequiere*, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) ("Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*."). The Court need not decide whether DBNTC was in privity with any party in the state court action, because DBNTC does not raise a *res judicata* defense.

challenges the validity of the mortgage documents and the defendants' ability to enforce their rights under those documents. These claims cannot be separated from the underlying foreclosure action, which was premised on the legitimacy and enforceability of the same mortgage documents, and on which the court-appointed referee and the court considered and relied. Under this test, the plaintiff's claims should have or could have been raised in the previous action.

In sum, even if the plaintiff's complaint stated a claim for fraud that the Court had jurisdiction to consider, it is *res judicata* as to Argent.

## VI.    Leave to Amend

The plaintiff asks that the Court grant leave to amend if it dismisses his amended complaint. (ECF No. 32 at 6.) "Although district courts generally grant *pro se* plaintiffs leave to amend a complaint, that leave may be denied when a plaintiff has already been given an opportunity to amend." *Zaerpour v. Bank of Am. Corp.*, No. 23-845, 2024 WL 2069555, at *2 (2d Cir. May 9, 2024) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend . . . for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).

The plaintiff has pleaded his claims "exhaustively." *Thomas v. Amazon.com Servs. LLC*, No. 23-CV-1271, 2025 WL 253276, at *14 (E.D.N.Y. Jan. 21, 2025); *see Vasquez v. City of New York*, No. 22-CV-5068, 2024 WL 1348702, at *14–*15 (E.D.N.Y. Mar. 30, 2024) (denying leave to amend). The Court previously permitted the plaintiff to amend the complaint, and gave him specific guidance on the standard that he would have to meet to survive a motion to dismiss. Instead, the plaintiff filed an almost identical complaint. Under these circumstances, further leave to amend is not warranted "because there is no 'indication that a valid claim might be

stated' as to those claims dismissed under Rule 12(b)(6)."  *Thomas*, 2025 WL 253276, at *14

(quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *see also Cobham v. N.Y. Racing*

*Ass'n, Inc.*, No. 22-CV-456, 2024 WL 4198453, at *10 (E.D.N.Y. Sept. 16, 2024)

("[A]mendment by a *pro se* party may be denied as futile where, as here, the pleading's

deficiencies cannot be cured.").  Indeed, amendment would be futile because the plaintiff's

"claims are barred by either the *Rooker-Feldman* doctrine or the applicable statutes of

limitations."  *Faulcon v. AB Venture LLC*, No. 25-CV-2416, 2025 WL 1548876, at *4 (E.D.N.Y.

May 30, 2025) (denying *pro se* plaintiff leave to amend).  Accordingly, the Court denies the

plaintiff leave to amend a second time.

## CONCLUSION

For these reasons, DBNTC's motion to vacate the entry of default is granted, the

defendants' motions to dismiss are granted, and the case is dismissed.

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY

United States District Judge

Dated: Brooklyn, New York

September 24, 2025